Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





JASON MEADOWS,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-05-00394-CR



Appeal from


 168th District Court


of El Paso County, Texas


(TC # 20030D06220)





O P I N I O N



 Jason Meadows appeals his conviction of assault against a family member, enhanced to a
second-degree felony by a prior family violence assault conviction and a prior felony conviction. 
A jury found Appellant guilty and assessed his punishment at a fine of $5,000 and imprisonment for
a term of twenty years. We affirm.

FACTUAL AND PROCEDURAL SUMMARY


 On the afternoon of August 16, 2003, El Paso Police Officer Jesus Trejo was dispatched to
an apartment complex regarding an unknown problem. The dispatcher had difficulty understanding
the caller because she had spoken so quietly. When Trejo arrived at the apartment, Jacqueline
Milton answered the door. Trejo immediately saw that Milton had bruises on her arms, legs, and
face, and her right eye was swollen shut. Consequently, he asked her to step out of the apartment
to speak with him. Milton was crying, scared, shaking, and she had difficulty standing up because
she was in pain. Milton told Trejo that Appellant had beaten her throughout the night because of an
argument about an ATM card. An officer photographed Milton's injuries and she was transported
by ambulance to a hospital. 

 While Trejo spoke with Milton, Officer Clinton McBain went inside the apartment and spoke
with Appellant. Appellant remained calm and did not say anything. He did not have any visible
bruises and did not complain that he was in pain. The officers arrested Appellant for family violence
assault. 

 Milton testified at trial that she had previously been married to Robert Milton and they had
two children. After Robert died in January 2003, Appellant, who was unemployed, began caring for
Milton's children while she was at work. Appellant eventually started living with Milton and they
began a romantic relationship in June 2003. After Milton lost her job, she had difficulty paying her
bills because Social Security was her only source of income. These financial difficulties led to
arguments between the couple. On August 13, 2003, Milton and Appellant argued when she refused
to give him any money. Two days later, they argued again when Appellant accused Milton of taking
$60 from his wallet. He took her ATM card so he could withdraw the money from her account. 
When Milton threatened to call the police, Appellant slapped her face. Continuing to demand his
money, he threw her against the closet door and punched her head and arms with his fists several
times. Milton tried to escape but Appellant grabbed her and pushed her into the entertainment
console. Appellant stopped hitting her when she fell to the floor. Milton tried to remain calm
because she was concerned about the safety of her children. Around midnight, Appellant demanded
that Milton call the telephone company and place the service in her name. She was unable to do so
because it was after business hours. This angered Appellant and he hit her, causing her to fall to the
floor again. Appellant kicked her in the stomach and back. After beating her for several minutes,
Appellant left the room. 

 Milton began thinking of ways she and the children could get out of the apartment and away
from Appellant. While Appellant's back was turned, she picked up a lava lamp with the intention
of hitting him in the head. Appellant turned around and saw it in her hand before she could approach
him. Milton immediately dropped the lamp; Appellant pushed her onto the bed and hit her in the
head with his fists several times. Milton screamed for him to stop but he continued. Appellant
eventually apologized but he took the phone with him when he left the bedroom. Milton stayed in
the bedroom until the following afternoon. When she saw that Appellant was asleep on the couch,
she called 911 in a quiet voice so as not to awaken him. When the police arrived, Milton pretended
that she was walking to the kitchen and then quickly answered the door. She told the officers what
had happened and they photographed her injuries. 

 The State introduced evidence that Appellant had assaulted Noemi Palomino on
September 22, 2002, by striking her in the head with his fists and by kicking her in the ribs. At the
time of that assault, Appellant was living with Palomino. Appellant was indicted for family violence
assault, enhanced with a prior family violence assault conviction. He entered into a plea bargain
with the State whereby he pled guilty to the lesser-included offense of assault and was sentenced to
150 days in the county jail. During the guilty plea, the trial court inquired whether the plea bargain
had been approved by Palomino. The prosecutor responded that they had been unable to locate her. 
The trial court then asked Appellant whether he knew her whereabouts. He responded that she was
a next door neighbor and he had only known her for three or four months. The judgment did not
include an affirmative "family violence" finding. See Tex.Code Crim.Proc.Ann. art. 42.013
(Vernon Pamph. 2006)(providing that in the trial of an offense under Title 5, Penal Code, if the court
determines that the offense involved family violence, as defined by Section 71.004, Family Code,
the court shall make an affirmative finding of that fact and enter the affirmative finding in the
judgment of the case).

 Prior to trial in this case, Appellant filed a motion to dismiss (1) asserting that his prior
conviction was for assault--not family-violence assault-- and therefore, the instant indictment alleged
only a misdemeanor. The trial court conducted a hearing and considered Appellant's testimony from
the guilty plea that the complainant was his next door neighbor. The court then made a factual
finding that the prior conviction was not a family violence case. The prosecutor argued that the court
lacked the authority to make the factual finding or to dismiss the indictment at this stage of the
proceedings. But the trial court disagreed and granted the motion to dismiss for lack of jurisdiction
because the State had not offered any evidence to prove that the prior assault involved family
violence. The State appealed and we reversed, holding that the trial court lacked authority to
determine the sufficiency of the evidence supporting the enhancement allegation. State v. Meadows,
170 S.W.3d 617, 620 (Tex.App.--El Paso 2005, no pet.). In a subsequent prosecution, the State is
allowed to use extrinsic evidence to prove that the prior assault was committed against a member
of the defendant's family or household. Id. at 619-20. We remanded the cause to the trial court for
Appellant to stand trial on the indictment. Id. at 620.

 This appeal follows the remand. The jury found Appellant guilty of assault, enhanced by a
prior family violence conviction as alleged in the indictment, and it further found that Milton was
a member of the household as defined by the court's charge. At the punishment phase, the State
introduced evidence of Appellant's six prior felony convictions. The jury found that one or more
of the enhancement allegations were true.

FELONY JURISDICTION


 In Issue One, Appellant contends that the indictment did not confer jurisdiction on the district
court since it failed to allege that Milton was a family member or member of the household, and thus
did not allege a felony. (2) The five-paragraph indictment for the offense of "Assault (Enhanced)," 
alleged that Appellant intentionally, knowingly, or recklessly caused bodily injury to Jacqueline
Milton by striking her on the head with the defendant's hand (Paragraph A), by striking her on the
body with the defendant's hand (Paragraph B), by grabbing her body with the defendant's hand
(Paragraph C), by throwing her body against a wall or door (Paragraph D), and by kicking her body
with his foot (Paragraph E). Each paragraph additionally alleged that prior to the commission of this
offense, Appellant had been convicted of an offense against a member of his family or household
as defined by Section 22.01 of the Texas Penal Code.

 The trial court set the case for pretrial motions on October 28, 2005 and jury trial on
November 14, 2005. The court also ordered that all Article 28.01 motions were to be filed seven
days before October 28, 2005 or they would not be considered. On November 7, 2005, Appellant
filed his "Second Motion to Quash" in which he raised several challenges to the indictment,
including a contention that Article 22.01 is unconstitutional. He also claimed that the indictment did
not allege facts that, if true, would establish the jurisdiction of the trial court. But he did not raise
the specific issue now argued on appeal.

 Trial began on November 14, 2005. Immediately prior to jury selection, Appellant brought
his motion to quash to the trial court's attention. The trial court denied the motion. At the
conclusion of the State's case-in-chief, Appellant argued that the court lacked jurisdiction because
the indictment failed to allege that Milton was a member of Appellant's family or household. The
trial court overruled this objection. The following day at the charge conference, the State requested
that a special issue be submitted to the jury inquiring whether Milton was a member of Appellant's
family or household. In making this request, the prosecutor pointed out that Appellant had filed his
motion to quash untimely and the motion did not specifically address Appellant's complaint that the
indictment did not include an allegation that Milton was a member of Appellant's family or
household. Defense counsel argued that he had attempted to obtain a setting on his motion during
the week before trial but the court had been unavailable. The trial court ruled that the pretrial order
required that the hearing be requested ten days before trial.

 Article 1.14(b) provides:

 If the defendant does not object to a defect, error, or irregularity of form or substance
in an indictment or information before the date on which the trial on the merits
commences, he waives and forfeits the right to object to the defect, error, or
irregularity and he may not raise the objection on appeal or in any other
postconviction proceeding. Nothing in this article prohibits a trial court from
requiring that an objection to an indictment or information be made at an earlier time
in compliance with Article 28.01 of this code.


Tex.Code Crim.Proc.Ann. art. 1.14(b)(Vernon 2005).

 By written order, the trial court established October 21, 2005 as the deadline for filing pretrial
motions and October 28, 2005 as the date for hearing pretrial motions. Appellant waived the issues
raised in his motion to quash because he did not file it until November 7, 2005. And even if
Appellant had timely filed his motion, he did not specifically raise the jurisdictional issue now urged
appeal. See Tex.Code Crim.Proc.Ann. art. 1.14(b); Tex.R.App.P. 33.1. We overrule Issue One.

RANGE OF PUNISHMENT


 In Issue Two, Appellant argues that since the indictment alleged only a misdemeanor assault,
and he was found guilty by the jury of assault as alleged in the indictment, the trial court erred by
permitting the jury to consider a second-degree felony punishment range. He additionally argues that
the special issue given to the jury inquiring whether Milton was a member of Appellant's family or
household was improper because jury verdicts in criminal cases must be general.

Waiver of Argument Regarding Special Issue


 The indictment alleged that Appellant assaulted Milton but it did not allege that she was a
member of his family or household. Because Appellant objected to the inclusion of this element in
the application paragraph, the trial court specifically omitted it from the application paragraph. 
Instead, the court submitted a special issue and asked the jury to separately find whether Milton was
a member of Appellant's family or household. Since Appellant did not object to the submission of
the special issue, he has waived his complaint.

Indictment Charged Third-Degree Felony


 Section 22.01 of the Penal Code provides that a person commits an offense if he
intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. 
Tex.Penal Code Ann. § 22.01(a)(1)(Vernon Supp. 2006). Generally, an offense under Subsection
(a)(1) is a Class A misdemeanor. See Tex.Penal Code Ann. § 22.01(b). However, the punishment
range for an offense under Subsection (a)(1) can be enhanced to a third-degree felony if the offense
is committed against a member of the defendant's family or household, and if it shown on the trial
that the defendant has been previously convicted of a family violence assault offense. Tex.Penal
Code Ann. § 22.01(b)(2).

 A written instrument is an indictment or information under Article V, Section 12 of the Texas
Constitution if it accuses someone of a crime with sufficient clarity and specificity to identify the
penal statute under which the State intends to prosecute, even if the instrument is otherwise
defective. Duron v. State, 956 S.W.2d 547, 550-51 (Tex.Crim.App. 1997). An indictment meeting
the constitutional and statutory mandates is not void even if it omits an essential element of a
criminal offense or includes information that may indicate innocence. Duron, 956 S.W.2d at 550-51;
Studer v. State, 799 S.W.2d 263, 272 (Tex.Crim.App. 1990); Hill v. State, 161 S.W.3d 771, 773
(Tex.App.--Beaumont 2005, no pet.).

 Although the indictment omitted one of the two elements necessary to enhance the offense
to a third-degree felony, it was sufficiently clear and specific to identify the penal statute under which
the State intended to prosecute Appellant. The indictment stated that Appellant was charged with
"assault (enhanced)." It alleged that Appellant assaulted Milton but it did not allege that she was a
member of his family or household. The indictment additionally alleged that Appellant had
previously been convicted of a family violence assault offense. A non-family violence assault cannot
be enhanced with a prior family violence assault conviction. Therefore, the State clearly intended
to prosecute Appellant under Section 22.01(b)(2) for family violence assault, a third-degree felony,
despite the failure of the indictment to allege that Milton was a member of Appellant's family or
household. Because the indictment charged Appellant with a third-degree felony and the jury found
Appellant guilty as charged in the indictment, and because the State introduced evidence that
Appellant had previously been convicted of other felonies, the trial court did not err by permitting
the jury to consider the second-degree felony range of punishment. Issue Two is overruled.

 COLLATERAL ESTOPPEL


 In his third issue, Appellant argues that the trial court denied him the effective assistance of
counsel and due process of law by not permitting him to raise an issue before the jury that the
predicate family violence case had been adjudicated against the State as a non-family violence
assault. Appellant filed a special plea of collateral estoppel with the trial court on the first day of
trial, November 14, 2004, and he sought to have the issue decided by the trier of fact pursuant to
Article 27.07 of the Code of Criminal Procedure and Ex parte Apolinar, 820 S.W.2d 792
(Tex.Crim.App. 1991). The trial court denied his request.

 The only special plea permitted in a criminal case is double jeopardy. See Tex.Code
Crim.Proc.Ann. art. 27.05 (Vernon 2006). (3) The special plea must be verified. Tex.Code
Crim.Proc.Ann. art. 27.06. All issues of fact presented in the special plea are to be tried by the trier
of fact on the trial on the merits. Tex.Code Crim.Proc.Ann. art. 27.07. Special pleas of double
jeopardy are governed by Article 28.01. Tex.Code Crim.Proc.Ann. art. 28.01, § 1(3). Pursuant
to the trial court's Article 28.01 scheduling order, Appellant was required to file his special plea no
later than October 21, 2005. The record before us reflects that Appellant did not file his special plea
until the first day of trial, November 14, 2005. Because the special plea was untimely filed, the trial
court did not err by refusing to submit any factual issues related to the special plea to the jury. 
Issue Three is overruled.

CHARGE ERROR


 In Issue Four, Appellant argues that there was no evidence to support the felony enhancement
allegations, and therefore, the trial court erred by submitting the enhancement allegations to the jury. 
He relies on Marshall v. State, 185 S.W.3d 899 (Tex.Crim.App. 2006) in support of his argument.

Standard of Review and Relevant Law


 When reviewing charge error, we employ a two-step analysis. Washington v. State, 930
S.W.2d 695, 698 (Tex.App.--El Paso 1996, no pet.). We must first determine whether error actually
exists in the charge. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); Washington,
930 S.W.2d at 698. In making this determination, we view the charge as a whole and our review is
not limited to a series of isolated statements or portions of the charge standing alone. Washington,
930 S.W.2d at 698; see Holley v. State, 766 S.W.2d 254, 256 (Tex.Crim.App. 1989). Second, we
must determine whether sufficient harm resulted from the error so as to require reversal. Almanza,
686 S.W.2d at 171; Washington, 930 S.W.2d at 698. Which harmless error standard applies depends
upon whether the defendant objected. Abdnor v. State, 871 S.W.2d 726, 731-32 (Tex.Crim.App.
1994); Washington, 930 S.W.2d at 698. Where the defendant failed to object, he must show that he
suffered actual egregious harm. Almanza, 686 S.W.2d at 171; Washington, 930 S.W.2d at 698.
Where there has been a timely objection made at trial, an appellate court will search only for "some
harm." Abdnor, 871 S.W.2d at 732; Almanza, 686 S.W.2d at 171. Under Almanza, we examine the
error in light of (1) the entire jury charge, (2) the state of the evidence, including the contested issues
and the weight of the probative evidence, (3) the arguments of counsel, and (4) any other relevant
information. Almanza, 686 S.W.2d at 171.

 Article 36.01 of the Code of Criminal Procedure requires that the indictment or information
be read to the jury, but the non-jurisdictional enhancement allegations are not read until the
punishment phase. Tex.Code Crim.Proc.Ann. art. 36.01(a)(1)(Vernon 2007); Turner v. State, 897
S.W.2d 786, 788 (Tex.Crim.App. 1995). The defendant must also enter his plea to the enhancement
paragraphs after the allegations are read before the jury. Tex.Code Crim.Proc.Ann. art.
36.01(a)(2); Turner, 897 S.W.2d at 788. These requirements are mandatory. Turner, 897 S.W.2d
at 788. The purpose of the rule is to inform the accused of the charges against him and to inform the
jury of the precise terms of the particular charge against the accused. Hernandez v. State, 190
S.W.3d 856, 867 (Tex.App.--Corpus Christi 2006, no pet.), citing Turner, 897 S.W.2d at 788. If the
enhancement allegations are not read and the defendant's plea is not taken, no issue is joined upon
which to enhance the punishment. Ex parte Sewell, 742 S.W.2d 393, 395 (Tex.Crim.App. 1987);
see Warren v. State, 693 S.W.2d 414, 415 (Tex.Crim.App. 1985); Peltier v. State, 626 S.W.2d 30,
31 (Tex.Crim.App. 1981). After the enhancements are read and the defendant's plea is entered, the
State is required to introduce evidence in support of the enhancements. Hernandez, 190 S.W.3d at
867. If the enhancement allegations are not read and the defendant's plea is not made prior to the
introduction of evidence in support of the enhancements, the error can be cured by reading the
enhancement paragraph, having the defendant plead to it, and reintroducing the evidence. Turner,
897 S.W.2d at 789 n.5; Welch v. State, 645 S.W.2d 284, 285 (Tex.Crim.App. 1983). Any error in
the State's failure to reintroduce the evidence so that it is properly before the jury can be waived by
failing to object. Castillo v. State, 530 S.W.2d 952 (Tex.Crim.App. 1976)(where defendant moved
only for a mistrial and did not object to State's failure to reintroduce the evidence, error was waived);
Ridge v. State, 855 S.W.2d 234, 236 (Tex.App.--Fort Worth 1993, no pet.)(any error in allowing jury
to consider evidence introduced before reading of enhancement paragraphs of indictment and
defendant's plea to those paragraphs was waived by defendant's failure to object on that basis in
narcotics prosecution). The defendant can also preserve error by requesting that the evidence be
stricken. Welch, 645 S.W.2d at 285.

Analysis


 The indictment did not include any enhancement paragraphs other than the prior family
violence conviction utilized to enhance the offense to a third-degree felony. Prior to trial, the State
filed a notice of its intention to seek an enhanced punishment range based on Appellant's prior
convictions of forgery (four counts) and burglary of a habitation (two counts). After Appellant was
found guilty and the case proceeded to the punishment phase, the State introduced the testimony of
a fingerprint expert who testified that Appellant's fingerprints matched those contained on the
certified copies of the judgments in State's Exhibits 16, 17, 18, 19, 20, 21, 22, 23, 23A, 24, 25 and
26. Those exhibits were admitted into evidence. The State then read to the jury the enhancement
paragraphs contained in the notice of enhancement filed by the State prior to trial. After the trial
court overruled Appellant's objection that the State's notice of enhancement had been untimely filed,
Appellant entered pleas of not true to the enhancements. The State offered additional punishment
evidence but it did not re-offer the evidence introduced prior to the reading of the enhancement
allegations. Appellant did not object to the State's failure to reintroduce the evidence nor did he
request that the evidence be stricken. During the charge conference, Appellant generally objected
that "this is not a correct verdict" and "[t]here is no evidence, or evidence to support the submission
of the charge." The trial court overruled the objections.

 Although the State and trial court did not initially comply with Article 36.01, the State cured
the error by reading the enhancement allegations and having Appellant plead to them. Because the
State did not reintroduce the evidence pertaining to the prior convictions, we must first determine
whether the charge is erroneous because it included the enhancement allegations. Stated differently,
does the evidence admitted prior to compliance with Article 36.01 support the enhancement
allegations submitted to the jury?

 Appellant cites Marshall in support of his argument that the charge is erroneous. There, the
indictment charged the defendant with burglary of a habitation, a first degree felony, but it did not
allege any enhancement paragraphs. Marshall, 185 S.W.3d at 900. The State filed a notice of intent
to seek an enhanced sentence under Section 12.42(b) of the Penal Code which describes
enhancement of the penalty range for a second-degree felony to a first-degree felony where it is
shown that the defendant has a prior felony conviction. Id. The notice described two prior
convictions from Oklahoma and expressed the State's intention to seek an enhanced sentence under
Section 12.42(b). Id. at 900-01. The State later filed a written notice of intent to introduce evidence
of extraneous offenses. Id. at 901. The notice listed five additional Oklahoma convictions and
expressed the State's intent to introduce the evidence during the punishment phase. Id. None of the
Oklahoma convictions was introduced until the punishment phase. Id. The State did not read the
enhancement allegations during the punishment phase. After the State's sole witness testified and
both parties had closed, the trial court said to defense counsel, "I'm going to enter a plea of not true
as to each prior on behalf of your client. Is that correct?" Defense counsel responded, "That's
correct, Judge." Id. The trial court then read the punishment charge to the jury. The punishment
charge instructed the jury that it was alleged Appellant had previously been convicted of two
felonies, namely, the two felonies set out in the enhancement notice. At variance with the State's
notice of intent to seek an enhanced sentence under Section 12.42(b), the charge went on to inform
the jury that the punishment range for burglary of a habitation, enhanced by two prior felony
convictions, is confinement for not less than 25 years nor more than 99 years and a fine not to exceed
$10,000, which is the enhanced punishment range provided for by Section 12.42(d). Id. 

 On appeal, the defendant complained that the evidence was "procedurally insufficient" to
support enhancement of the sentence, the enhancement allegations had not been read, his plea had
not been taken at the beginning of the punishment phase, and the charge failed to instruct the jury
on the range of confinements and fines within which it must assess punishment if it found the
enhancement allegations untrue. Id.; Marshall v. State, No. 06-03-00215-CR, 2004 WL 2715398
at *5-6 (Tex.App.--Texarkana 2004). The court of appeals vacated the defendant's sentence and
remanded for a new punishment hearing because it found that the evidence of the prior convictions
was procedurally insufficient to support the enhancement of the sentence. Id. at *5. The appellate
court ruled that, because the only evidence in support of the prior convictions was introduced before
the reading of the enhancements to the jury and the taking of the defendant's pleas to those
allegations, "no issue was joined." Id. at *5. It also held that the failure to read the enhancement
paragraph or take the defendant's plea at the beginning of the punishment phase was error but it did
not conduct a harm analysis because it had already determined the case would be remanded for a new
punishment hearing. Id. at *6. The court additionally found that the charge was defective because
it did not provide for the contingency that the jury might find the enhancement allegations untrue and
the verdict form did not allow the jury to find either or both of the enhancement allegations untrue. 
Id. at *5. Again, the court did not perform a harm analysis. Id. The State's petition for discretionary
review was granted.

 The State conceded that the failure to read the enhancement allegations and take the
defendant's plea was error, but it argued that the defendant did not preserve the issue by objecting,
the error did not result in insufficient evidence to support the enhancement allegations, and the error
was harmless. Marshall, 185 S.W.3d at 902. The Court of Criminal Appeals did not address the
State's contention that the defendant had failed to preserve error by objecting to the failure to read
the punishment allegations or obtain his plea at the beginning of the punishment phase or to the
jury's consideration of the evidence. See id. at 902-03 and n.3. Instead, the court bypassed the
Article 36.01 issue and shifted to a discussion of the charge error found by the court of appeals,
namely, the State seeking an enhanced sentenced beyond what had been specified in its notice to the
defendant. Id. at 903. Because the defendant had not objected to the charge error, it was to be
addressed under Almanza's egregious harm standard. The court remanded the cause for the court
of appeals to conduct a harm analysis under that standard. Id. On remand, the court of appeals
concluded that the charge error did not result in egregious harm. Marshall v. State, No. 06-03-00215-CR, 2006 WL 1996400 at *1-2 (Tex.App.--Texarkana July 19, 2006, pet. ref'd). The court
also analyzed whether the error in failing to comply with Article 36.01 was reversible under
Tex.R.App.P. 44.2(b). Id. at *3 and n.6. It concluded that the error did not affect the defendant's
substantial rights and did not have an injurious impact on the punishment verdict. Id. Accordingly,
the court affirmed the conviction. Id.

 We believe that Marshall is distinguishable. The enhancement allegations were never read
to the jury in that case, such that the enhancement issue was never joined. Here, the issue was joined
when the State read the enhancement allegations and Appellant entered his pleas of not true. If the
Court of Criminal Appeals' opinion is read as holding that it is unnecessary to object to Article 36.01
error, it conflicts directly with prior decisions holding that such error must be preserved by the
defendant. See e.g., Welch, 645 S.W.2d at 285; Castillo, 530 S.W.2d at 952. We do not believe the
court intended to so hold, and we decline to read Marshall as standing for that proposition.

 We acknowledge that a defendant is not required to object to charge error in order to preserve
it for appellate review. But it is equally well-established that a defendant waives any error in the
admission of evidence by failing to object. Absent a timely and specific objection, the evidence is
before the jury for all purposes. Cf. Hammock v. State, 46 S.W.3d 889, 895 (Tex.Crim.App. 2001)
(if evidence is admissible for a limited purpose but party does not request a limiting instruction at
time evidence is admitted, the evidence becomes part of the general evidence and may be used for
all purposes); Black v. State, 938 S.W.2d 758, 760 (Tex.App.--Amarillo 1997, no pet.)(because
defendant failed to object to evidence of extraneous offenses or request limiting instruction, evidence
could be properly considered for all purposes including assessment of punishment). It follows that
when the defendant's basis for asserting charge error is that the evidence supporting the submission
of a particular instruction was improperly admitted, the defendant must have brought the evidentiary
error to the court's attention by a timely and specific objection. Absent an objection, the evidence
is admitted for all purposes.

 Appellant did not object that the State had failed to reintroduce the evidence nor did he
request that the evidence be stricken in order to remove it from the jury's consideration. See
Castillo, 530 S.W.2d at 952; Welch, 645 S.W.2d at 285. Appellant's general objection to the charge
that there was no evidence to support its submission does not preserve his specific complaint that
the punishment evidence could not be considered by the jury because the State had failed to
reintroduce the punishment evidence after the requirements of Article 36.01 were met. To preserve
error for appeal, an appellant must timely object, specifically stating the legal basis for the objection. 
See Tex.R.App.P. 33.1; Rezac v. State, 782 S.W.2d 869, 870 (Tex.Crim.App. 1990). The purpose
of requiring timely, specific objections is to apprise the trial court of a party's complaint and thereby
afford the judge an opportunity to rule at a time when the error could have been avoided or corrected
by the trial court. See Gibson v. State, 726 S.W.2d 129, 131 (Tex.Crim.App. 1987). Appellant's
objection is too general to inform the trial court that the State had not reintroduced the evidence and
it could not be considered by the jury. Having failed to make a specific objection, Appellant waived
any complaint regarding the jury's consideration of this evidence. Consequently, the evidence
admitted prior to the reading of the enhancement allegations was properly before the jury and it
supports the submission of the enhancement allegations in the court's charge. The trial court did not
err by submitting the enhancement allegations to the jury. Issue Four is overruled.

SELF-DEFENSE


 In Issue Five, Appellant asserts the trial court erred by failing to instruct the jury on self-defense. Appellant did not request a self-defense instruction at trial.

 A person is justified in using force against another person when and to the degree the person
reasonably believes the force is immediately necessary for protection against that other person's use
or attempted use of unlawful force. Tex.Penal Code Ann. § 9.31(a)(Vernon 2003). The actor is
not justified in using force if the actor is responding to force that the actor consented to or provoked. 
Tex.Penal Code Ann. § 9.31(b). A defendant is entitled to an instruction on the law of self-defense
if there is some evidence that he intended to use force against another and he did use force, but he
did so only because he reasonably believed it was necessary to prevent the other's use of unlawful
force. Ex parte Nailor, 149 S.W.3d 125, 132 (Tex.Crim.App. 2004). A defendant is entitled to an
instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or
weak, unimpeached or contradicted, and regardless of what the trial court may think about the
credibility of the defense. Ferrell v. State, 55 S.W.3d 586, 591 (Tex.Crim.App. 2001). However,
if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense,
the defendant is not entitled to an instruction on the issue. Ex parte Nailor, 149 S.W.3d at 132;
Ferrell, 55 S.W.3d at 591.

 Appellant argues he is entitled to a self-defense instruction based on Milton's testimony
that she picked up a lava lamp with the intent of hitting him and based on Officer Trejo's testimony
that a lava lamp can be a deadly weapon. The State responds that Appellant is not entitled to a self-defense instruction because Appellant did not admit the offense. The defendant is not entitled to a
self-defense instruction if he does not first admit to the actions and the mental state that comprise
the offense. Anderson v. State, 11 S.W.3d 369, 372 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd)
("Self-defense is a justification for one's actions, which necessarily requires admission that the
conduct occurred."), citing Young v. State, 991 S.W.2d 835, 838 (Tex.Crim.App. 1999)(discussing
defense of necessity as justification). Self-defense is inconsistent with a denial of the conduct.
Sanders v. State, 707 S.W.2d 78, 81 (Tex.Crim.App. 1986). Because Appellant did not admit
assaulting Milton, he is not entitled to an instruction on self-defense.

 Even if Appellant had admitted the offense, the evidence does not raise self-defense. The
undisputed evidence shows that Milton dropped the lamp when Appellant turned around and saw
it in her hand. There is no evidence that Appellant reasonably believed that it was necessary to use
force against Milton to prevent her from striking him with the lava lamp. Issue Five is overruled.


VOIR DIRE


 In Issue Six, Appellant contends that the trial court erred by not permitting him to ask the
venire "does anyone here think that death is the only proper punishment for capital murder?" The
trial court sustained the State's relevance objection.

 The right to counsel protected by Article 1, Section 10 of the Texas Constitution
encompasses the right to ask proper questions on voir dire to permit the intelligent exercise of
peremptory and for cause challenges. Taylor v. State, 109 S.W.3d 443, 452 (Tex.Crim.App. 2003).

When an appellant challenges a trial judge's limitation on the voir dire process, the reviewing court
must analyze the claim under an abuse of discretion standard, the focus of which is whether the
appellant proffered a proper question concerning a proper area of inquiry. Howard v. State, 941
S.W.2d 102, 108 (Tex.Crim.App. 1996); Caldwell v. State, 818 S.W.2d 790, 793 (Tex.Crim.App.
1991). A proper question is one which seeks to discover a veniremember's views on an issue
applicable to the case. Howard, 941 S.W.2d at 108. If a proper question is disallowed, harm to the
appellant is presumed because he has been denied the ability to intelligently exercise his peremptory
strikes. Id.

 Appellant argues on appeal that the question was proper because it was would enable him
to discover which veniremembers were "harsh." Appellant was permitted to ask whether any
veniremembers believed that the maximum punishment available for the offense was not enough.
Appellant was not charged with capital murder, and therefore, the veniremembers' views on the
death penalty are inapplicable to the case. Because the question was not a proper one, the trial court
did not abuse its discretion by refusing to allow Appellant to ask it. Issue Six is overruled.


FINAL ARGUMENT


 In Issue Seven, Appellant maintains that the prosecutor impermissibly argued that the
community demanded a long prison term. Defense counsel argued that Appellant had already been
punished for his previous crimes and the jury should not punish him again. She stressed that the
punishment assessed should fit the crime and she specifically asked that the jury consider
rehabilitation. Counsel also told the jury that the sentence should not be a political message but
should simply fit the crime. The prosecutor responded:

 And the Defense has mention that punishment was done on this. Well, let's see. He
committed the offense of forgery on March 11, 1992. He was placed on probation,
according to this, subsequently revoked from probation and sent to prison, and he
was sentenced to nine years in prison -- and he was sentenced to nine years in prison
on July 7, 1994. Okay. Well, we have him on 3/10/94 being convicted of assault. 
We have him on, let's see, 2/24/98 being convicted of unauthorized use of a motor
vehicle. You kind of get the picture here.


 What punishment has he done? In the course of 13 years, you have nine, now 10
felonies and nine misdemeanors. Where is that punishment? And how is society
being protected? He has shown over the course of 13 years that, okay, Mr. Meadows,
no, don't do that. Here, let's fix you. Here's probation. Let's do something for you. 
Let's make you a better man. No. Okay. Maybe you'll get the message from a little
prison time. Let's put you away for a period of time, get you fixed. Okay. That
doesn't work. We commit another felony. We commit another misdemeanor. We
assault another person. We burglarize another person's building. Nothing stops
Jason Meadows. He keeps going.

 

 So where are the best interests of society served? What is going to be able to take
care of people on the street? What is more merciful? What is more proper? 
Wouldn't it be more merciful and more proper to protect society from Jason
Meadows' next victim? Okay.


 We often, as a society, when we walk down the streets say, oh, my goodness, that guy
is still out. This is that case. When you walk down the street and we tell people a
guy with nine misdemeanors and 10 felonies is still walking the street --


 [Defense counsel]: Your Honor, we must object, a call for communities -- calling
for --


 [The Trial Court]: Overruled.


 [Defense counsel]: Thank you, Your Honor.


 [The prosecutor]: This is that case, where people say, oh, my goodness, he's still out
there. This is the time when we say, no, not anymore. We took care of that. We did
the best we could. Most we can do here is 20. And one, to punish him for the very
lengthy and egregious criminal history he has had; two, to protect his past and future
victims. Ask yourselves, what is the only reasonable punishment? We can't ask you
for more than 20. Given this lengthy record, we wish we could. But we can't. The
most we can do is 20. And we would ask you to assess that punishment because ask
yourselves, what else is reasonable in this circumstance? Nothing.


 Appellant contends that the highlighted portion was improper because it informed the jury
that the community demanded a certain verdict. The State responds that the argument was a proper
plea for law enforcement and purely an answer to the argument of defense counsel.

 Proper jury argument must fall within one of the following areas: (1) summation of the
evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) answers to
opposing counsel's argument; and (4) pleas for law enforcement. Shannon v. State, 942 S.W.2d 591,
597 (Tex.Crim.App. 1996). In reviewing final arguments, we must consider the remarks at issue in
the context of the entire jury argument rather than isolated sentences. Denison v. State, 651 S.W.2d
754, 761 (Tex.Crim.App. 1983).

 A proper plea for law enforcement may take many forms, one of which is to argue the
relationship between the jury's verdict and the deterrence of crime in general. Borjan v. State, 787
S.W.2d 53, 55 (Tex.Crim.App. 1990). Prosecutors may properly argue that juries should deter
specific crimes by their verdict. Id. The State may also argue the impact of the jury's verdict on the
community. Id., citing Adams v. State, 685 S.W.2d 661, 671 (Tex.Crim.App. 1985); Haynes v. State,
627 S.W.2d 710, 714 (Tex.Crim.App. 1982). But the State may not argue that the community or any
particular segment of the community expects or demands either a guilty verdict or a particular
punishment. Id. An argument is acceptable if it asks "the jury to be the voice of the community,"
but not if it asks "the jury to lend its ear to the community." Cortez v. State, 683 S.W.2d 419, 421
(Tex.Crim.App. 1984).

 Considering the argument in context, we conclude that the prosecutor did not inform the jury
that the community demanded or expected that they impose a long sentence. Rather, the prosecutor
asked the jury to assess a long sentence because Appellant had not responded to any of the sentences
previously imposed and in order to protect society from Appellant. This argument did not ask the
jury to lend its ear to the community but rather asked it to be the voice of the community. 
Accordingly, the trial court did not err in overruling Appellant's objection. Issue Seven is overruled.



June 7, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. Appellant has not argued, in either the trial court or in this court, that the State was collaterally estopped from
relitigating the issue of whether Palomino was a member of Appellant's family or household, nor did he file a pretrial
writ of habeas corpus raising the collateral estoppel issue.
2. The table of contents in Appellant's brief identifies seven issues presented on appeal but the issues are
misnumbered in the body of the brief because the first two issues were both designated as "Issue One." We will address
the seven issues as they are identified in the table of contents.
3. Article 27.05 provides:


 A defendant's only special plea is that he has already been prosecuted for the same or a different
offense arising out of the same criminal episode that was or should have been consolidated into one
trial, and that the former prosecution: (1) resulted in acquittal; (2) resulted in conviction; (3) was
improperly terminated; or (4) was terminated by a final order or judgment for the defendant that has
not been reversed, set aside, or vacated and that necessarily required a determination inconsistent with
a fact that must be established to secure conviction in the subsequent prosecution.